# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO
_____

THERESA A. MARTINEZ,

      Plaintiff,

vs.                                   Civil No. 99-00781 LH/WWD

KENNETH S. APFEL,
Commissioner of Social Security,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

1.   This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed February 22, 2000 **[docket # 6]**.   The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  Plaintiff is 45 years old and alleges a disability which commenced June 27, 1995, due to chronic asthma, borderline anemia, hypoglycemia, dizziness, chest pain, constant fatigue, headaches and ear infections. She completed three years of high school and attended secretarial school, and has worked as a cashier, waitress, receptionist, and retail sales clerk.

2.   The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that these impairments constituted a severe impairment when considered in combination, but nevertheless found that Plaintiff is able to return to past work as a retail cashier, receptionist and retail sales clerk with certain limitations. The Appeals Council denied Ms. Martinez' request for review of the ALJ's decision, thus the ALJ's

decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

4.   Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ's determination that Plaintiff could perform her past relevant work as a retail cashier, receptionist and retail sales clerk is unsupported by substantial evidence and is legally erroneous; (2) the ALJ failed to develop the record by failing to order consultative mental and rheumatological examinations or to obtain Dr. Ting's treatment records; and (3) the ALJ's credibility determination is unsupported by substantial evidence and is legally erroneous.

5.   "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A) and 1382c(a)(3)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

6.   Plaintiff last worked at a full-time job in 1992.  Tr. at 85.  She was, however, doing some babysitting until she quit when she underwent a hysterectomy in February 1998 , from which

2

she was still recovering at the time of the hearing.  Tr. at 42.  She described her asthma condition at

the hearing, stating that she had mild attacks once or twice a week during the springtime when

more dust and allergens were in the air, but that the rest of the time, her inhalers "pretty much"

controlled the condition.  Tr. at 54-55, 67-68.  Plaintiff stated that these attacks are triggered by a

sensitivity to cold, including drafts from air conditioners, which causes her nose to "plug up" if

she's exposed for more than 30 minutes.  Tr. at 57-58.  To control the attacks, she uses her

nebulizer or lies down with a heating pad.

7.  A record of Plaintiff's treatment for asthma began in 1986.  Tr. at 354.[1]  She was

diagnosed with bronchial asthma, with allergies to dirt, dust, and cigarette smoke, Tr. at 196, and

has seen several doctors for the condition, including Dr. Walcher, Dr. Lindley and Dr. Jackson.

The record indicates that her asthmatic condition necessitated several visits to the emergency room,

once in June 1995 and twice in 1996 -- once in May and once in June.  Tr. at 207, 386, 241.  The

condition was under good control in February 1998 (except for nasal obstruction upon exposure to

cold air), Tr. at 416, in November 11, 1997, and also in October 1994.  Tr. at 195, 418.

8.  Plaintiff continued to see Dr. Walcher for her asthma in 1996 and 1997.  Tr. at 382,

384-85, 387-78.  The condition has interfered with her employment as a carhop/waitress at Sonic,

and Dr. Walcher recommended that Plaintiff stop working there.  Tr. at 356, 357, 387.  She

reported experiencing stress from her job at Auto Zone and reported that chemicals in the air and

cigarette smoke aggravated her asthma and made her eyes red and swollen.  Tr. at 383.

9.  Ms. Martinez told the ALJ that she can lift a full gallon of milk, and can carry a 20

---

[1]  The record also contains evidence of ear infections and dizzy spells or vertigo.  See, e.g.,
Tr. at 252, 338, 377.  However, these impairments are not at issue.

pound bag of dog food for over ten feet, but that she will start to wheeze with a heavier load or if she pushes herself too hard.  Tr. at 70.  Before she underwent a hysterectomy in 1998, Plaintiff was able to keep her house clean, but has her son do the vacuuming and wears a mask when the windows are open to avoid exposure to allergens and dust, to which she stated she is extremely sensitive.  Tr. at 63.

10.   At the hearing, the ALJ inquired about Plaintiff's previous jobs.  Plaintiff testified that in her previous job at Auto Zone, she suffered stress due to sexual harassment.  Tr. at 38-41.  This harassment, along with her duties which involved lifting, standing and climbing, the fumes from a battery charger and the cold from the store's air conditioner, caused asthma attacks on the job as well as hypoglycemia and dizziness.  Tr. 36-37; 39.  She eventually cut back her workweek to 15 hours.  After leaving Auto Zone, Plaintiff worked as a cashier, a job which she had trouble performing because cold air was getting inside the store and was aggravating her asthma.  Tr. at 36.

11.   Plaintiff complains of anxiety which comes from an inability to handle stress and stated that she was given a prescription that calms her down and helped "a little bit" with the anxiety she experienced, but not the stress itself.  Tr. at 59-60.  Plaintiff also told the ALJ that she sometimes becomes "extremely tired" and that she has "weakness spells" once or twice a day, causing her to have to lie down. Tr. at 66; see also Tr. at 194.  She told the ALJ that she lies down almost every day anywhere from 20 minutes to one hour.  Tr. at 69.

12.   Dr. Walcher referred Plaintiff for a psychological consultation which was done in September 1997.  The report stated that Plaintiff was preoccupied with worrying and with details

and offered a diagnosis of generalized anxiety disorder.  <u>Tr. at 408-10</u>.[2]  The evaluator

recommended individual therapy and medication. <u>Id</u>.  A report done in April 1998 by Dr.

Castaneda, a pulmonologist, stated that Plaintiff related that she has "marked anxiety" and

"frequent crying episodes."  <u>Tr. at 406</u>.

     13. Plaintiff also experienced double vision following endoscopic sinus surgery in October

1997.  <u>Tr. at 418</u>.  By February 1998, her symptoms had improved somewhat, although left lateral

gaze diplopia remained.  <u>Tr. at 329</u>.  By April, Plaintiff had visited three other opthalmologists for

the problem.  <u>Tr. at 329-30, 404, 405</u>.  At this point, the blurred vision had stabilized but her

glasses were no longer useful.  She was ultimately diagnosed by Dr. Bowers with myopia with

beginning presbyopia and was fitted with different corrective lenses. <u>Tr. at 405</u>.

**First Alleged Error**

     14.   Plaintiff alleges that the ALJ's determination that Plaintiff could perform her past

relevant work as a retail cashier, receptionist and retail sales clerk is unsupported by substantial

evidence and is legally erroneous.  The allegation is two-fold: that her past work as a receptionist

does not qualify as past relevant work; and that the ALJ failed to perform an adequate step four

analysis.

*Past Relevant Work*

     15.   I find no merit to the contention that Plaintiff's job as receptionist does not qualify as

past relevant work.  Past relevant work is defined as work that (1) occurred within the past fifteen

years (2) was of sufficient duration to enable the worker to learn to do the job, and (3) was

substantial gainful employment.  <u>Jozefowicz v. Heckler</u>, 811 F.2d 1352, 1355 (10th Cir. 1987).

---

     [2]  These pages also appear in the record at 351-53.

16.   There appears to be a conflict over whether Plaintiff worked as a receptionist for a month, Tr. at 76-77, 152, or for over a year, Tr. at 134.  Although the vocational expert ("VE") who testified at the hearing stated working for a month as a receptionist would have been sufficient to acquire the necessary skills associated with the job of receptionist, Tr. at 77,  work limited to a month could not be considered substantial gainful employment, under the applicable regulations. See 20 C.F.R. § 404.1574(b)(3)(viii) and § 416.974(b)(3)(vii).

17.   However, even if Plaintiff's job as receptionist cannot be considered past relevant work, the ALJ's conclusion that Plaintiff can return to past work is still supported by the evidence: the VE testified that Plaintiff is able to work as a retail cashier and retail sales clerk.  Tr. at 79-81.

*Step Four Findings - Physical RFC*

18.   Plaintiff contends that the ALJ's step four analysis was inadequate and legally erroneous.[3]  Step four of the sequential analysis is comprised of three phases: the ALJ must evaluate a claimant's physical and mental residual functional capacity ("RFC"); determine the physical and mental demands of the claimant's past relevant work; and finally, determine whether the claimant has the ability to meet the job demands found despite the mental and/or physical limitations found in phase one.  Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (citing Henrie v. United States Dep't of Health & Hum. Servs., 13 F.3d 359, 361 (10th Cir. 1993)) & SSR 82-62).

19.   Contrary to Plaintiff's contention, I find that the ALJ did make appropriate inquiries into Plaintiff's past jobs, Tr. at 35-44, included relevant aspects in her the hypotheticals which she

_____

[3]  Plaintiff mischaracterizes Defendant's own description of the ALJ's step four findings as conceding that they were "inadequate." Reply at 2.  However, Defendant merely concedes that the decision was "brief" but nevertheless adequate.  Resp. at 5-6.

posed to the ALJ, Tr. at 78-80, and considered Plaintiff's RFC and past work demands in her decision.  Tr. at 16-17.

20.   A review of the transcript reveals that much of the usual questioning was obviated by the fact that Plaintiff often took the initiative in describing her past work and associated difficulties, making prompting by the ALJ unnecessary.  Nevertheless, the necessary information concerning Plaintiff's RFC, physical and mental, was obtained at the hearing.  This information included a consideration of Plaintiff's duties and the manner in which she responded to work pressures Plaintiff was under at the various jobs at which she had worked.  Also, the ALJ considered reports from health care providers who had evaluated and treated Ms. Martinez for her stress/anxiety impairment.  See SSR 85-16.

21.   Plaintiff maintains that the hypotheticals did not accurately reflect Plaintiff's impairments and restrictions. See Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993) (vocational expert's testimony can provide substantial evidence to support the ALJ's findings only if the hypothetical question presented to the vocational expert adequately reflects the state of the record).  However, I find that the hypotheticals asked of the VE were supported by the evidence from the record.

22.   For example, Plaintiff argues that the hypothetical posed to the VE should have specified a need to avoid cold air coming from air conditioners, since the record established that common air conditioning exacerbated Plaintiff's asthma, sinus and ear problems and since the ALJ herself found that Plaintiff needed to avoid "cold drafts."  Tr. at 17.  I find no deficiency in the hypothetical.

23.   The ALJ's hypothetical described these limitations as a need to avoid "poor

7

ventilation, extremes of cold and heat, particularly the cold. . . ." <u>Tr. at 78</u>.   A cold draft from an

air conditioner is one of any number of events which can be described as resulting in an extreme of

cold temperature.   Further, the VE had been present through the hearing and had heard Plaintiff's

testimony, <u>Tr. at 75</u>, including Plaintiff's specific complaints about air conditioning and cold drafts.[4]

24.   Plaintiff also challenges the hypothetical in that it omits the limitation that Plaintiff

experiences fatigue and shortness of breath on minor exertion.   The ALJ did in fact include this

limitation in one of the hypotheticals, when she asked the VE how the occupational base would be

affected if Plaintiff needed to lie down for a minimum of two hours a day.   The VE responded that

the limitation would preclude all competitive employment. <u>Tr. at 83</u>.

25.   I also note that in coming to her conclusion that Plaintiff could nevertheless perform

some past relevant work, the ALJ discounted Plaintiff's complaints of severe fatigue, finding them

not supported by the record, and also finding that Plaintiff overstated the degree of fatigue she

experienced.  <u>Tr. at 16</u> (<u>see</u> discussion, <u>below</u>, on third alleged error).  <u>See</u>, <u>e.g.</u>, <u>Monier v. Apfel</u>,

F.Supp.2d 1035 (E.D.Mo. 1998) (ALJ posing a hypothetical question to a vocational expert is not

required to include all of a social security disability claimant's limitations, but only those which he

or she finds credible).

26.   The ALJ's conclusions are also supported by the findings in two RFC evaluations that

were done, one in February 1996 by Dr. Clint Morgan (Tr. at 232-38), and the other in August

1996 (Tr. at 255-62) by Dr. R. Powell.   Both evaluations took into account Plaintiff's asthmatic

---

[4]  Plaintiff contends that the hypotheticals were faulty in that none of them included
Plaintiff's twice weekly asthma attacks.  However, in posing hypotheticals which include
restrictions that would eliminate triggers for the attacks, there would be no need to also include the
attacks.

condition and various environmental stressor, yet still concluded she was able to work.

27.   Dr. Morgan imposed no exertional limitations on Plaintiff, but stated that she should avoid fumes, odors, dust and gases and extreme cold.  Dr. Powell stated that Plaintiff should avoid exposure to extreme cold and heat, wetness, humidity, fumes, odors, dust and gases.  He opined that Plaintiff was able to perform light work and disagreed with Plaintiff's ob/gyn doctor who had opined that Plaintiff should be limited to working less than 5 hours a day due to abdominal pain. Tr. at 38-39, 261.

*Step Four Findings - Mental RFC*

28.   Plaintiff alleges that the ALJ failed to adequately evaluate Plaintiff's mental RFC under step four and also failed to use a medical advisor when she filled out the Psychiatric Review Technique Form ("PRT").  Tr. at 19-21.  I find no error on this basis.

29.   First, at the ALJ hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor.  Cruse v. U.S. Dep't of Health & Hum. Serv., 49 F.3d 614, 617 (10th Cir. 1995).  In this case, the ALJ based her findings recorded on the PRT from evidence contained in the record pertaining to Plaintiff's condition of stress-induced anxiety. Tr. at 351-53; 406-07.

30.   The only mental impairment mentioned in the record and which Plaintiff alleges is stress-induced anxiety.  The ALJ did consider job stress and the mental demands Plaintiff's former jobs placed on her, and also considered the various medical reports and RFC evaluations in order to determine whether Plaintiff was able to perform any former work, thus satisfying step four requirements.  As mentioned above, Plaintiff spontaneously offered details and descriptions of each job, including her responsibilities and difficulties with each one.  See e.g., Tr. at 39-40.

9

31.   Plaintiff contends that because none of the medical reports mentioned any work-related limitations, they were insufficient as a basis for the ALJ's findings.  I disagree.  Plaintiff attempts to enlarge the ALJ's duty to develop the record to an impermissible point, requiring the ALJ to find work limitations where none have been imposed by those physicians who treated Plaintiff.

32.   Accordingly, I find that the ALJ's determination that Plaintiff could perform her past relevant work as a retail cashier, receptionist and retail sales clerk[5] is supported by substantial evidence and is not legally erroneous.

**Second Alleged Error**

33.  Plaintiff next alleges that the ALJ failed to develop the record by failing to order consultative mental and rheumatological examinations or to obtain Dr. Ting's treatment records.  For the following reasons, I find no error on the ALJ's part on any of these bases.

*Psychological Consult*

34.   Social security regulations specify that a special procedure must be followed when evaluating a mental impairment.  Andrade v. Sec'y of Health & Hum. Serv., 985 F.2d 1045, 1048-49 (10th Cir. 1993) (citing Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir. 1991)).

35.   The procedure requires first a careful review of the case record to determine if a mental impairment exists.  Andrade, 985 F.2d at 1048-49.  The ALJ must then  "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment contained in [the] . . case record." § 404.1520a(b)(1).  Findings relevant to work are then put on a standard

---

[5]  I assume here that Plaintiff worked as a receptionist for a year or so.  If not, Plaintiff can still perform past relevant work at the other two positions.

document (the PRT).  Andrade at 1049.

36.  Plaintiff relies on Hill for the proposition that the ALJ in this case should have ordered a mental consult because the record contains evidence of a mental impairment, i.e., Plaintiff's anxiety.  However, Ms. Martinez' factual situation is distinguishable from the plaintiff in Hill whose mental impairment was never separately evaluated.  The consultative examination that was done noted only that her chronic fatigue could "more likely . . . be chronic mental depression."  Hill, 924 F.2d at 973.  In the present case, Ms. Martinez underwent a mental health evaluation at the request of one of her treating physicians.  See ¶ 13, above; Tr. at 408-10.

37.  The ALJ has broad latitude in determining whether to order a consultative examination.  See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 778 (10th Cir.1990).  Plaintiff presents no evidence or argument to show that there exists a conflict with the medical evidence, or that the medical evidence is inconclusive or insufficient, so as to support the contention that the ALJ erred in not ordering a psychological consult.

*Rheumatological Consult*

38.  Plaintiff was evaluated by Dr. Iqbal for her diplopia and nasal numbness, who ordered some diagnostic tests.  The tests showed an elevated sedimentation rate, ANA and anti-DNA lab results.  Tr. at 331-32, 412.  Dr. Iqbal ordered more blood tests and finally referred Plaintiff to an ophthalmologist, who determined that she needed corrective lenses.  Tr. at 332.

39.  In developing the record, the ALJ must inquire into the nature of a claimant's impairments, treatment for the impairments and the impact they have on claimant's activities.  See Musgrave v. Sullivan, 966 F.2d 1371 (10th Cir. 1992).  As far as Plaintiff's diplopia and numbness, I see no error in failing to order a rheumatological consult given the extent of the examinations and

11

treatment Plaintiff received for these problems.  The record contains no evidence of other

rheumatological impairment, nor does Plaintiff allege any.  See Flint v. Sullivan, 951 F.2d 264, 267

(10th Cir. 1991) (burden of proof initially rests on the claimant to show he is disabled).

*Dr. Ting's records*

40.   Dr. Ting evaluated Plaintiff's asthmatic condition.  Apparently, he was uncooperative

in releasing records to Plaintiff or her attorney, except for a one page report.  Tr. at 47.  The ALJ

told the parties at the hearing that she would send a letter to Dr. Ting if she felt she needed to see

the actual test results.  Tr. at 85.

41.   An ALJ has the duty to develop the record by obtaining pertinent, available medical

records which come to his attention during the course of the hearing.  Carter v. Chater, 73 F.3d

1019, 1021 (10th Cir. 1996) (citing Baker v. Bowen, 886 F.2d 289, 291-92 (10th Cir.1989)); see

20 C.F.R. § 404.944.

42.   Given the considerable amount of medical evidence already available relating to

Plaintiff's asthma condition, I find that the ALJ's duty to develop record did not necessarily require

her to subpoena or otherwise attempt to obtain Dr. Ting's records.  Neither remand nor reversal is

warranted for any of the grounds asserted in the second alleged error.

**Third Alleged Error**

43.   Plaintiff contends that the ALJ's credibility determination is unsupported by substantial

evidence and is legally erroneous.  Plaintiff points to the frequent doctor visits and continuing

asthmatic attacks as a basis for her position.

44.   A claimant's subjective complaints by themselves are insufficient

to establish disability.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.1990).  Several factors are

relevant in determining the credence given to a claimant's statements of disabling pain, including medications used and their effectiveness, the extensiveness of the attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

45.    The ALJ relied on this legally correct standard when conducting the credibility inquiry. Despite the frequency of Plaintiff's medical visits for her asthma condition, the ALJ's credibility determination is nevertheless supported by substantial evidence from the record, particularly when considering the other credibility factors and Plaintiff's other complaints.

46.    The ALJ noted that complaints of fatigue were not supported by the evidence.  See Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983) (deference should be given to the factfinder's assessment, including exaggeration of symptoms by claimant).  She also noted that Plaintiff's severe asthma attacks were infrequent, that the condition was otherwise generally controlled by the use of inhalers and that her vision problems were due to the fact that she needed corrective lenses. Tr. at 16.  These findings are based on the evidence from the record.

47.    In sum, I find that (1) the ALJ's determination that Plaintiff could perform her past relevant work as a retail cashier, receptionist and retail sales clerk is supported by substantial evidence and relied on the correct legal standard; (2) the ALJ adequately developed the record even though she did not order consultative mental and rheumatological examinations or obtain Dr. Ting's treatment records; and (3) the ALJ's credibility determination is supported by substantial

evidence and was based on a legally correct standard.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 6]** be DENIED and this cause of action DISMISSED WITH PREJUDICE.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).


                                        _____
                                        UNITED STATES MAGISTRATE JUDGE